The order of the Special Term is affirmed, with $10 costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D Smith,* Justices.]

BISSEL *vs.* TORREY and others.

The plaintiff, being the owner of a canal boat, employed the defendants to tow the same from Albany to New York. The boat used by the defendants, in towing the same, did not belong to them, but to a steamboat company, and was chartered by the defendants for the season, under an arrangement by which they were to pay so much for a round trip, for the use thereof, and the company were to pay the expenses of running the boat, and were to hire and pay the men engaged thereon, and the defendants were to receive the earnings of the boat, after paying expenses. The canal boat, after being towed to New York, was sunk, in the harbor, through the negligence of the hands managing the tow-boat. *Held* that the defendants were not liable to the plaintiff for the consequences of such negligence.

*Held, also,* that for the negligence of those employed on the towing boat, the owners, alone, were liable; and the action against them would not be on the contract, but for breach of the duty to tow safely.

MOTION for a new trial, ordered to be heard in the first instance at the General Term, and that in the meantime judgment be suspended.

The plaintiff was the owner of the canal boat *Joseph Congdon,* that was lying near Troy in November, 1860, with a cargo on board, destined for the city of New York.

The tow-boat *Alice Price* was owned by the Never-

sink Steamboat Company, and was engaged in towing boats between Troy and New York. One Scott was the agent at Troy for procuring boats to be towed by the *Price*, and an agreement was entered into between the plaintiff and Scott that the *Alice Price* should tow his boat to New York for $45. The *Congdon* was taken in tow, and after arriving in the harbor of New York, she, through the negligence, as the plaintiff alleges, of the hands managing the *Alice Price*, struck a vessel lying in the harbor, and was sunk. This action was brought to recover the value of the boat and cargo. On the first trial of this cause, the plaintiff recovered a verdict against two of the defendants, and a verdict was rendered in favor of the third, Samuel W. Torrey.

The General Term set aside the verdict, and ordered a new trial, upon the ground that upon the evidence, neither of the defendants was liable to the plaintiff.

On the last trial the court nonsuited the plaintiff, and ordered the exceptions to be heard, in the first instance, at the General Term.

*By the Court*, MULLIN, P. J.  The only questions to be considered in this case are, as to whether the defendants, or either of them, is liable to the plaintiff for the negligence that occasioned the loss of the plaintiff's boat.

It is an undisputed fact in the case that the *Alice Price* was owned by the Neversink Steamboat Company, and that company had chartered her, for the season of 1860, to S. W. & W. A. Torrey, to be run between New York and Monmouth. R. Cornell White testifies that he was the secretary of the steamboat company, and that its affairs were managed by an executive committee of three of the stockholders, of whom he was one. They chartered the steamboat to the Messrs. Torrey at a certain price for the round trip; the company to employ and pay the men, and the Messrs. Torrey to receive the earnings of the boat, after paying expenses.

About the 1st of October, it was proposed to run the *Price* as a tow-boat, between Troy and New York, instead of between New York and Monmouth, and there was some change in the amount to be paid for her use. But the owners remained obligated to man and furnish her, until the expiration of the time for which she was chartered. The money received for the use of the boat was paid to a firm of which White was a partner, and by them passed to the credit of the steamboat, and out of it were paid the expenses of running her.

William Torrey testifies that after the first of October, 1860, the *Price* was run for him, the earnings were paid to his sons who had the charter for the season, and they paid the expenses. The obligation of the steamboat company to furnish men and manage the boat does not appear to have been changed.

Some stress is laid, by the plaintiff's counsel, upon the fact that White made the contract with Torrey, and assumed to man and run the boat from the 1st of October, till the 15th of December, when the original charter expired. It appears that William Torrey prepared a writing, and submitted it to Mr. White, by which White assumes, as between him and Torrey, the obligation to man the boat. But that writing was never signed by either party. Torrey, however, urges that the boat was run in conformity to it.

If White had signed the agreement drawn by William Torrey, as between them, he would have been the party bound, and not the steamboat company. By not signing it he was at liberty to show in what capacity he acted in making the contract. Torrey must have known that White was not acting for himself, but was acting for the steamboat company. This appeared by the original memorandum, which constituted the charter between the company and the Messrs. Torrey. It appeared by the documents in the custom-house, relating to the

Bissel *v.* Torrey.

title to the boat, and I do not find that Mr. Torrey denied knowledge of the character in which White acted.

There is evidence that White said he was owner, or the largest owner, of the *Price*, and that he was liable to the plaintiff for the loss of his boat. It was true that he was the largest owner, but whether he was liable for the loss of the boat, was a question of law, as to which, he was not concluded by his opinion, especially if it was erroneous.

Upon the whole case, I cannot doubt but that the steamboat company was the party who employed and paid the men, who managed the *Price* at the time of the injury to the plaintiff's boat.

I do not think that the evidence that any other person or party was liable, would sustain a verdict finding that fact. All that was said and done by White is consistent with the liability of the company, as he was managing agent and officer of it, and receiving for his services an annual salary.

The plaintiffs' counsel insists that this action is brought on the contract, and the breach of which is negligence in the performance of it, whereby the plaintiffs' boat was lost.

The contract to tow the plaintiffs' boat was made with William Torrey, if his testimony is correct, and it was him alone that was liable for a breach of it. For negligence of those employed on the towing boat, its owners alone were liable, and the action against them would not be on the contract, but for the breach of duty to tow safely.

We do not discover that the case is changed from what it was when before us at a former term, and we must deny the motion for a new trial, and order judgment of nonsuit in favor of the defendant.